## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| DANZELL THROWER, | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 CV 50340 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| AMBER ALLEN, SUSAN TUELL, and | ) | |
| KRISTINA MERSHON, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff alleges that the three defendants were deliberately indifferent to his reports of abdominal pain, blood in his stool, and vomiting and nausea while he was at Dixon Correctional Center. *See* 28 U.S.C. § 1983. In their answers, the defendants asserted the affirmative defense of failure to exhaust administrative remedies, and now seek summary judgment on that defense. For the reasons that follow, the motions are granted, the amended complaint is dismissed, and this case is terminated.

## BACKGROUND

As evident from the responses to each other's Local Rule 56.1 statements of facts, the parties do not agree on much other than that plaintiff Danzell Thrower was an inmate at Dixon Correctional Center from November 2016 to October 2017. According to Mr. Thrower's statement of additional fact, from May to October 2017 he made several complaints of severe abdominal symptoms including sharp pain to defendants Susan Tuell and Kristina Mershon, both nurses at Dixon. Pl. Statement of Addt'l Facts [Dkt. 64] #2. As a result of his condition, he was unable to eat normally and lost 25 pounds. *Id.* #3. Ms. Mershon, Ms. Tuell and defendant Amber Allen, a nursing administrator, failed to treat his symptoms or refer him to a doctor. *Id.* ##4, 5. His symptoms worsened, including vomiting and rectal bleeding. *Id.* #6. To get the defendants' attention Mr. Thrower ingested metal pieces and was finally referred to a gastroenterologist, who removed the pieces and diagnosed the plaintiff as suffering from an ulcer. *Id.* at ##7, 10, 11.

Defendants Tuell and Mershon object to Mr. Thrower's recitation of his medical history because his statements of fact rely only on his unverified amended complaint, rather than on any evidence in the record such as medical reports or an affidavit. *See Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (to survive summary judgment, the non-movant "must present some evidence, beyond the bare allegations of his complaint."). Defendant Allen did not respond to Mr. Thrower's statements of fact and so did not lodge the same objection. The Court expects more from counsel. Nevertheless, those facts as alleged by Mr. Thrower remain unsupported by record evidence. Ultimately, though, other than providing background, those asserted facts have not factored into the Court's resolution of the pending motions.

The parties dispute what if any grievances Mr. Thrower filed about the defendants' alleged deliberate indifference. Mr. Thrower contends that he submitted three grievances: on September 21, 2017; October 2, 2017; and January 11, 2018. Pl. Statement of Addt'l Facts [Dkt. 64] ##13, 14, 15. In support, he attaches the three grievances. *Id.* According to Mr. Thrower, in the September 2017 grievance, he complained about the nurses at Dixon and their rude behavior. *Id.* #13. In the October 2017 grievance, he contends that he complained about the sharp pain in his stomach, persistent vomiting of blood, a B-wing nurse's refusal to help him, and officials' failure to contact the nurses. *Id.* #14. And finally in the January 2018 grievance, he contends that he complained about defendants Mershon and Tuell's refusal to give him proper medication. *Id.* #15.

Defendants Mershon and Tuell dispute that Mr. Thrower submitted the September and October 2017 grievances. But in support, they cite to an interrogatory response by defendant Allen in which she states that Mr. Thrower never filed them "upon information and belief," without elaborating how she knows that. Tuell & Mershon Resp. to Pl. Statement of Addt'l Facts [Dkt. 66] ##13, 14; *see Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927 (7th Cir. 1998) (trial court did not abuse its discretion when on summary judgment it disregarded a verified affidavit based on "information and belief."). Again, the Court expects more from counsel. Nevertheless, all three defendants rely on an affidavit from Sarah Johnson of the Administrative Review Board stating that the ARB keeps records of all grievances and responses that inmates appeal, and that the ARB has no record of any grievance from Mr. Thrower "about access to, the quality of, of the timing of his medical treatment for abdominal issues, sharp pains in his stomach, blood in his stool, vomiting, or nausea." Tuell & Mershon Statement of Facts [Dkt. 66] ##9, 10, 11; Allen Statement of Facts [Dkt. 56] #19.

## ANALYSIS

The Prison Litigation Reform Act requires prisoners to exhaust all administrative remedies available to them before they may have their claims heard in a federal court. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). To exhaust administrative remedies, a prisoner must comply with the procedures and deadlines set forth in the prison's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Exhaustion is a precondition to filing suit in federal court, thus an inmate may not exhaust his administrative remedies after filing. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The Seventh Circuit requires strict compliance with available exhaustion procedures. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, where the prison fails to inform a prisoner of the grievance procedure, the grievance procedure is rendered unavailable and the exhaustion requirement is inapplicable. *Hernandez*, 814 F.3d at 842-43. The defendant bears the burden of proving a prisoner failed to exhaust the available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

The grievance procedure for inmates at Illinois Department of Corrections facilities like Dixon is set out at 20 Ill. Admin. Code § 504.810 *et seq.* It requires prisoners to follow a three-step process to exhaust their administrative remedies: (1) informally attempt to resolve the grievance with a prison counselor, (2) formally file the grievance with the prison's grievance

officer within 60 days of the incident giving rise to the complaint, and (3) if the prisoner is not satisfied with the grievance officer's response, to file an appeal to the ARB within 30 days of the date of the grievance officer's decision. 20 Ill. Admin. Code §§ 504.810, 830, 850. The grievance must contain as much factual detail as possible regarding the incident, including relevant names, dates, and locations. However, where names are not known, "the offender must include as much descriptive information about the individual as possible." *Id.* at § 504.810. If an inmate has been transferred away from the facility where the incident occurred, he shall submit his grievance directly to the Administrative Review Board. *Id.* at § 504.870.

The defendants filed two separate motions for summary judgment on the limited issue of exhaustion. The Court begins with the motion by IDOC defendant Amber Allen. Ms. Allen contends that Mr. Thrower failed to exhaust as to her because he filed no grievance identifying her or any conduct by her. The Court agrees. Even accepting as true Mr. Thrower's contention that he filed the grievances attached to his summary judgment materials, none of them names Allen or gives any information that appears to be about her. In the September 21, 2017, grievance, Mr. Thrower complains that nurse Wolber has a "rude manner," and that she agreed to tell her boss as well as nurses Mershon and Tuell "what is happen[ing]," but never did. Dkt. 64 Ex. A. He also asks that nurses Mershon and Wolber be held accountable "for letting me bleed from my rectum for retaliatory purposes." *Id.*. Even if Ms. Allen is the "boss" to whom Mr. Thrower referred, the grievance does not accuse the boss of any wrongdoing. The October 2, 2017, grievance likewise does not mention Allen. Dkt. 64 Ex. B. It does refer to a Jane Doe nurse on B-wing and correctional officer William who refused him medical attention after he vomited blood and had a mild seizure in his cell. *Id.* But Mr. Thrower does not contend in his response brief that the October 2017 grievance is about Ms. Allen, and in his amended complaint he refers to her as a nurse administrator to whom he wrote a letter detailing his medical condition, rather than as a nurse who ever attended to him. Dkt. 17 ¶ 14. There is nothing in the grievance, or anywhere else in the record, to support that Mr. Thrower's reference to the nurse on B-wing who refused to treat him was Ms. Allen. As for his January 11, 2018, grievance, it refers only to defendants Mershon and Tuell. Dkt. 64 Ex. C. More significantly, Mr. Thrower contends that he filed it in January 2018, months after he filed suit in November 2017, and so it cannot serve as evidence that he exhausted that grievance before he filed suit. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable.") (emphasis in original). Because none of the grievances he contends he filed identify Ms. Allen, her motion for summary judgment on the issue of exhaustion is granted.

The court now turns to the motion by Wexford defendants Mershon and Tuell. They contend that Mr. Thrower has also failed to exhaust his administrative remedies as to them. Assuming again solely for purposes of this motion that the plaintiff did file the three grievances submitted with his summary judgment materials, two of them clearly do not address Ms. Mershon or Ms. Tuell. Neither the October 2, 2017, grievance nor the January 11, 2018, grievance mention them or any conduct by them. Dkt. 64 Ex. B, C. The October 2, 2017, grievance does mention the Jane Doe nurse on B-wing who refused him medical attention, but Jane Doe cannot be either Ms. Mershon or Ms.Tuell because Mr. Thrower established in his earlier grievance from September 2, 2017, that he knew both of them by name. *Id.* Ex. B. Additionally, as mentioned above, the January 11, 2018, was filed after Mr. Thrower initiated

this lawsuit, and so that grievance cannot serve as evidence that he exhausted that grievance before he filed suit. *Id.* Ex. C.

That leaves only the September 21, 2017, grievance. In it, Mr. Thrower mentions both Ms. Mershon and Ms. Tuell. But Mr. Thrower does not allege any wrongdoing by Ms. Tuell; rather, he mentions only that nurse Wolber told him she would report her rude manner to Ms. Tuell and Ms. Allen, but never did. Dkt. 64 Ex. A. The grievance does allege misconduct by Ms. Mershon, asking that she be held accountable "for letting me bleed from my rectum." *Id.* As a result, the grievance does satisfy the requirement that the prisoner's grievance contain factual detail about the incident and the identity of the persons involved. *See* 20 Ill. Admin Code § 504.810.

However, it is undisputed that Mr. Thrower never appealed the September 21, 2017, or for that matter the the October 2, 2017, or January 11, 2018, grievances.[1] Dkt. 63 at #19. Under the Illinois Administrative Code, a grievance officer has two months in which to respond to a prisoner's grievance "when reasonably feasible under the circumstances." *See* 20 Ill. Admin Code § 504.830(e). If the prisoner is not satisfied with the response, the next step toward exhaustion is to file an appeal with the ARB within 30 days of the grievance officer's decision. *Id.* at § 504.850(a). Mr. Thrower did not do so. In fact, he filed suit before the two months had passed during which the grievance officer was to respond to his grievance. As a result, Mr. Thrower filed suit too soon, before he had completed the process to administratively exhaust his grievances. *Chambers*, 956 F.3d at 984. Mr. Thrower asserts that Ms. Tuell misled him about the grievance process by telling him that it can take six months to a year to get a response to a grievance. Pl. Statement of Addt'l Facts [Dkt. 64] #17. He argues that her misstatement made the grievance process unavailable to him, excusing him from exhausting. *See Dole*, 438 F.3d at 809 ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). Defendant Tuell disputes that she told Mr. Thrower it takes six months to a year for a response to a grievance. Mershon & Tuell Resp. to Pl. Statement of Addt'l Facts [Dkt. 66] #17. But even if she had, such a statement might explain a *delay* in appealing, or at least checking on the status of his grievance. *See Lockett v. Bonson* 937 F.3d 1016, 1027-28 (7th Cir. 2019) (prisoner who did not receive receipt provided for in regulations should have followed up to ascertain the status of his appeal); *Hill v. Bond*, No. 13 CV 7305, 2015 U.S. Dist. LEXIS 29593, at *9 (N.D. Ill. Mar. 11, 2015) (Shah, J.) ("inmates fail to exhaust if they do nothing—do not follow up, do not ask for instruction, or fail pursue the issue in any way—after hearing no response to a grievance."). It does not explain why Mr. Thrower jumped the gun by filing suit too early, before the grievance officer's time to respond had passed. Nor does his transfer from Dixon to Pontiac excuse his failure to appeal before filing suit because he could have appealed directly to the ARB. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("Whether by 'appeal' or through a fresh grievance raising a problem that occurred at an earlier-assigned facility, Chambers needed to submit the matter to the ARB.")

---

[1] In response to defendant Allen's statement of fact #19 that the plaintiff failed to appeal the results of any grievance he filed while at Dixon, the plaintiff responded that he disputed the assertion, but cited to no record evidence. He also disputed the assertion because it was a legal conclusion. But whether or not he appealed is a fact, not a legal conclusion. As a result, Allen's statement of fact #19 is deemed admitted.

In summary, Mr. Thrower failed to exhaust his administrative remedies as to defendant Allen and Tuell because he does not identify any wrongdoing by them in the grievances that he contends he submitted, and as to all three defendants because he did not wait for a response to his grievances before filing suit. For those reasons, all three defendants are entitled to judgment on their affirmative defenses of failure to exhaust.

However, that does not resolve all of the issues presented to the Court. In the grievance Mr. Thrower contends he filed on January 11, 2018, he stated that he was housed at Dixon on the date he filed it, and was reporting about conduct that occurred at Dixon. Defendants Mershon and Tuell contend the defendant backdated the grievance because by January 11, 2018, he had been transferred to Pontiac. Reply [Dkt. 65] at 2. It is undisputed that Mr. Thrower was transferred away from Dixon in October 2017. Defs. Mershon and Tuell Responses to Pl.'s Statement of Facts [Dkt. 66] #1. Defendants Mershon and Tuell assert that the grievance has been doctored to look like it was filed on January 11, 2018, and was actually filed by Mr. Thrower in January 2019, noting that it was stamped received by Dixon on January 16, 2019. It is not clear why Dixon stamped it at all if he was no longer there. In any event, the defendants assert that the defendant backdated the document, had assigned counsel submit it in opposition to the motions for summary judgment, and has thereby committed a fraud upon the Court. As a result of the fraud, defendants Mershon and Tuell contend that the plaintiff's complaint should be dismissed.

Accusations of a backdated document filed with the Court to oppose a motion for summary judgment raise a serious concern that would normally warrant further inquiry and an evidentiary hearing. But the plaintiff's case is already being dismissed for failure to exhaust, so the Court declines to inquire further at this time to determine whether the complaint should also be dismissed because of a fraud on the Court. However, if the case ever returns to this Court, it will take up the issue then.

## CONCLUSION

For the reasons given, the defendants' motions for summary judgment [51] and [54] are granted, the plaintiff's amended complaint is dismissed for failure to exhaust, and this case is terminated.

Date: December 22, 2020        By: _____

Iain D. Johnston
United States District Judge